The first case on the call this morning is People of the State of Illinois v. Taylor. Good morning, Your Honors. My name is Emily Atwood. I'm with the Office of the State Appellate Defender, and I represent Lavelle Taylor in this manner. This case is a textbook example of an actual conflict of interest. Here, Lavelle Taylor and his co-defendant and brother Lowell Taylor were represented by the same attorney, Raymond Prusak. The State theorized here that Lowell Taylor committed a shooting and that Lavelle Taylor was accountable for handing him a gun. Prior to trial, Lavelle and his parents brought three witnesses to Mr. Prusak's law offices. The witnesses told Mr. Prusak that they had been present when the shooting occurred. They saw Lowell commit the shooting, and they did not see Lavelle pass him a gun. These witnesses would have exculpated Lavelle, the less culpable defendant, but at the same time inculpated Lowell. However, Lavelle's case proceeded to trial, and Mr. Prusak did not call these witnesses. Lavelle Taylor was denied his right to an unconflicted attorney who could have determined whether or not to call exonerating witnesses and whether or not to pursue plea negotiations with the State. An attorney unhampered by his duty of loyalty to his other client would have called these witnesses. In Cuyler v. Sullivan, the United States Supreme Court held that in order to establish a Sixth Amendment violation, a defendant who failed to raise an objection to a conflict at trial must demonstrate his lawyer's representation that there was an actual conflict of interest that adversely affected his lawyer's representation. To show an actual conflict of interest, a defendant must specify a specific defect in trial counsel's strategy, tactics, or decision-making attributable to the conflict. First and foremost, an actual conflict of interest manifested itself here by Mr. Prusak's failure to call these three witnesses. These three witnesses would have provided exonerating testimony for Lavelle. Mr. Prusak's representation of Lavelle was adversely affected because he failed to call these witnesses. Because he was simultaneously representing both Lavelle and Lowell, he did not call these witnesses because he did not want to put the stand. Did he testify that his decision not to call these three witnesses was based upon their credibility? If that is true, does that establish that the decision here was not attributable to the conflict? I'm sorry, Your Honor. The witness's credibility? Yes. He testified that the witnesses made a terrible impression on him. However, Your Honor, the moment these witnesses walked into the door, Mr. Prusak was operating under an actual conflict of interest. And as my argument will show, the main reasons that he stated the evidentiary hearing that he did not call the witnesses are not supported by the record. Another manifestation of the conflict of interest was the severance of Lavelle and Lowell's trials. In this case, Lavelle received a bench trial while Lowell received a jury trial. At the evidentiary hearing, Mr. Prusak testified that if they had had the same trier of fact, there would have been a conflict. In that quote, they had the need to be severed because they needed separate triers of fact. Because there was a potential there that a jury shouldn't hear what Lowell had to say and what Lavelle had to say. Prusak's severing of the trial in his testimony at the evidentiary hearing indicated he knew that Lavelle and Lowell's interests were hostile and antagonistic towards one another. As I've already stated, Mr. Prusak testified at the evidentiary hearing that there were multiple reasons why he chose not to call Lavelle and Lowell at trial. However, these complaints are completely belied by the record. First of all, Mr. Prusak testified that he believed that their purported trial testimony would be inconsistent with their previous statements. Immediately following the shooting is when this was interviewed by the police. At that time, they told the police that they were present for the shooting, that they saw Lowell commit the shooting. Their testimony at trial that they were present at the shooting, they saw Lowell commit the shooting, and they did not see Lavelle handle a handgun would have been consistent with his previous statement. Second of all, Mr. Prusak also testified that he believed that the witness's testimony would be inconsistent with what Lavelle had previously told him in private. In private, Lavelle had told Mr. Prusak that when the shooting occurred, he was around the corner breaking out car windows with a handgun. The witness's testimony that they were present at the shooting, they saw Lowell commit the shooting, and they did not see Lavelle handle a handgun, would not be inconsistent here either. Third of all, Mr. Prusak stated that he did not call the witnesses because of their bad backgrounds. In this case, all of the state's witnesses and the defense witnesses were gang members and had prior criminal convictions. Furthermore, only one state witness... What standard of review do we have with respect to what the trial judge found at the conclusion of the evidence we're hearing? Because this is a dismissal following an evidentiary hearing, normally the standard of review is manifestly erroneous, Your Honor. However, in this case, we're requesting that you review this under the de novo standard of review, because when the trial court dismissed Lavelle's petition, it found that there was a substantial deviation of Lavelle's constitutional right. It did not specify what the legal issue they were finding the court was ruling on. And also, he only acknowledged that Mr. Prusak had testified and did not weigh the credibility of the six defense witnesses against Mr. Prusak. However, under either standard of review, we believe that Lavelle has either de novo or manifestly erroneous. We believe that Lavelle has shown a substantial deprivation of his constitutional right. What do we do with some of the... The judge found Prusak to be more credible right than the parents, who said that the only reason that, like, when they brought the three witnesses, the parents brought the three witnesses into the office, didn't the parents say that he said he couldn't call them because that would tend to convict Lowell, right? Regarding the trial court's findings or the appellate court's findings? The appellate court found Mr. Prusak to be credible, but as I've gone through here, his reasons for not calling the witnesses are not supported by the record. And given that he had three witnesses that came into his office prior to trial, they told him very critical information as to Lavelle's case, did not call them because they would have harmed Lowell's case. Again, we believe that this court should reverse their amendment for a new trial. Regarding Mr. Prusak's claims that the witnesses had bad backgrounds, again, this was the only one state witness had identified Lavelle as passing the gun to Lowell. By calling these witnesses, Mr. Prusak's case would have only been made stronger. The state's case would not have gone better by calling these witnesses. And furthermore, these witnesses didn't say anything incriminating as to Lavelle. Another additional point regarding these witnesses is that these witnesses were interviewed very closely after the shooting and they immediately identified Lavelle, I'm sorry, Lowell as committing the shooting. These were fellow gang members of both Lavelle and Lowell. They testified, one of them testified at the evidentiary hearing that he had known both Taylor brothers for eight or nine years. The fact that they were fellow gang members and they had a friendship with them would have made their testimony more credible. The state argues on page 34 of its brief that the defendant can't show that there was an actual conflict of interest in the dual representation because there was no hostility between these two co-defendants as to their defense, neither implicated the other. And secondly, with regard to these three witnesses, claims that the attorney would have suborned perjury because their statements were different to the police and even inconsistent with the defendant's own statement with regard to how he used the handgun. How do you respond? Number one, regarding that they hadn't directly implicated one another, the fact that these witnesses would have, if they had been called at Lavelle's trial, would have testified that they provided that they were present when the shooting occurred, they saw Lowell commit the shooting, and they did not see Lavelle pass him a gun. These defenses were hostile. And regarding the suborning perjury, the suborning perjury statute requires that you're knowingly putting forth false testimony. In this case, when this came into Mr. Prusak's office, they told him what they had seen, and he was under, there was nothing else in the record that would indicate that he would knowingly be putting forth false testimony. If there was nothing, the record would show that nothing was raised at the time of the trial. Correct, Your Honor. Your client didn't object or raise anything with the trial court. This all came up in the post-conviction. Yes, Your Honor. Thank you. If there are no other questions, in sum, Lavelle Taylor did not receive effective assistance of counsel, or his attorney Raymond Prusak was engaged under an actual conflict of interest. Mr. Lavelle did not receive an attorney who, he had an attorney who was constrained by his representation of his co-defendant, and for these reasons, I respectfully request that you reverse and remand for a new trial. Thank you. Good morning, Your Honors. Counsel, may it please the Court, my name is Labita Popovich, and I'm here on behalf of the people of the State of Illinois. In this case, both this Court and federal district courts have said that a showing of actual conflict plus an adverse effect needs to be shown in order for a conflict of interest claim to prevail following a third stage evidentiary hearing. In this case, counsel has argued that there has been an actual conflict, but cannot show that there is any adverse effect. Now, this Court has not had an opportunity to define adverse effect under a specific factual scenario. Counsel, why would it have been better to leave out the three, quote, unquote, bad witnesses on defendant's side who witnessed the event and who did not see defendant had a gun, but leave unchallenged the State's, quote, unquote, bad witness who did see defendant had a gun? Because it was a common and good defense strategy. It didn't make sense to call three bad witnesses on the defense side, ones that not only had one, two, or three convictions, but they had multiple felony convictions and were rival gang members to the State. It didn't make any sense to call these witnesses and then argue in closing argument, believe my three witnesses with their three, with their multiple convictions, but don't believe the State witnesses. As a criminal defense attorney, it made sense as a trial strategy to rest on reasonable doubt. Force the State to prove their case. Didn't the State, though, have witnesses that also had criminal backgrounds? They did, they did, but the three, when you factor in both, the defense attorney would lose any moral high ground that he could possibly have in a closing argument to argue, you can't believe, you know, you can't believe the State witnesses, but you can believe the defense witnesses. And the defense witnesses, there were more of them. There was Plumer, there was Bingham, and there was Michael Woods. All of them had multiple convictions. Not only that, they would have been impeached. They did as well, and Prusak tried to impeach them and did impeach them. A review of the record shows that he very vigorously attacked them on cross-examination, and as a criminal defense attorney, that was a prudent trial strategy. The trial strategy that's being proposed now, in analytical hindsight, simply doesn't make sense in the real world, in the real trial. A reasonable defense was reasonable doubt. To cross-examine the witnesses, which he did, not only did he cross-examine them vigorously, but Marshall, one of the witnesses, was completely nullified on the State's side, and Baker, the one that actually said that Lavelle Taylor passed the gun to his brother, was also cross-examined and questioned regarding his statements to the police. Now, had he called these three witnesses on the defense side, they very easily would have been impeached multiple times through impeachment by omission. They would have been impeached because they had an opportunity to talk to the police immediately following the event. They knew that their friend and fellow gang member had been arrested, and they said nothing, not one word, not Plumer, not Bingham, and not Woods, not one of them. Not only that, Attorney Prusak was retained shortly after the arrests. Joyce Parker testifies that she retained both of the brothers right afterwards, and he testified that there was no complaint that there might be some type of conflict. Now, these three witnesses that now come forth and say they went to the attorney's office and said some things didn't even come forward then. The defendant was arrested in August of 1996. These witnesses didn't even come forward until 1997, and in the reply brief it says that it's undisputed that they came forward in February of 1997. The state does dispute that. None of them testified to that. So it's kind of an unknown, very unclear date when they actually came to talk to Attorney Prusak to tell them this alleged information. So months have gone by, at least six months if we were to believe the defense, at least six months. So it didn't make sense that he would call these witnesses at a trial knowing that they had multiple convictions, that they said something inconsistent to the police, that they would open themselves up to impeachment by omission, and any state's attorney would know how to effectively impeach them and then use that against the defense in a closing argument. It was prudent trial strategy to rest on reasonable doubt. Now, the defense comes back and argues just because if there was a conflict of interest, if there was an actual conflict, they're asking this court to reverse. The people's position is that's not enough. It's not enough just to have the actual conflict. There is this adverse effect prong. Under Kyler v. Sullivan and its progeny, there are two parts. One is the actual conflict, but even if that is shown, there is the adverse effect, and that's completely where the argument falls apart. Attorney Prusak testified, and it was a credibility determination, and deference should go to the trial court for making a credibility determination. Now, in the trial court's findings, the trial court didn't specifically articulate every single one of the witnesses that testified, but the trial court did say that he reviewed all of the evidence, that he listened to all of the testimony, and that he found that the defendant hasn't proven a substantial deprivation of his right. In saying that, he implicitly made a credibility finding. The defendant had an opportunity to call his witnesses to try to show actual conflict. The state had the opportunity to rebut that evidence. In fact, the trial court said, I'd like to hear from Mr. Prusak, and Mr. Prusak did testify, and there was a credibility determination, and deference should be given. The trial court's decision at the end of the evidentiary hearing was certainly not against the manifest weight of the evidence as it was presented. First, Michael Woods didn't even testify. So we really only have Plumer and Bingham, and we have Joyce Parker. The conflict occurs between Joyce Parker's statement, the attorney told me if he called certain witnesses, that would implicate my son Lowell, but not LaValle, and Attorney Prusak's statement. He testified. She never said that. He testified that the decision not to call them wasn't because of what they said to him. He discounted that. The decision was because it made sense as a trial technique. And this is a trial defense attorney that has had much experience in the criminal courts presenting criminal defense cases. Now, under Kyler v. Sullivan, the adverse prong needs to be met as much as the actual conflict. Most recently, the 7th District... We do dispute that there was an actual conflict here. At best, it was a potential, a potential that wasn't realized until these witnesses actually came into his office. And I understand your position with respect to adverse effect, but should a defendant have the opportunity for strategic decision to be made without a potential conflict looming? Certainly under the case law, it's necessary that there is an actual conflict and the adverse effect. We're not talking about a per se conflict. That's already been resolved in People v. Hernandez. We're talking about the other line. We look at the adverse effect after the fact, right? We look at it and say, well, opposing counsel says calling the three witnesses would have been better. You say legitimate trial strategy would be reasonable doubt and not calling the three witnesses. If we look at it at the beginning of the situation when the decision has to be made, should a defendant have the absolute right to have no conflict when strategic decisions are made? Well, initially, just to take a step back, initially when the attorney was retained, there's no question, there's no conflict. At that time, these witnesses didn't even come forward. There's no conflict a month later, there's no conflict even six months later. There is a potential conflict maybe six months plus later when these witnesses came to the office and said, we were there, we saw Lavelle there, but we didn't see him hand a gun. At that point, the people's position is it was a potential conflict. The triggering event is whether this attorney was going to call these witnesses. And he didn't call them not because of a conflict, he didn't call them because it didn't make sense to call them in this case. As he testified, he believed in the strength of the defense case because the state had one witness that flipped and had another witness that, as was mentioned, was also a gang member and could be impeached and was impeached on cross-examination. So the triggering event was what the attorney believed at that time. Now, assuming there even was an actual conflict, the defense still has to show that there was an adverse effect. And Gonzales v. Mize, the 7th District, recently defined adverse effect as a but-for reasonable likelihood test. But for an actual conflict, there has to exist a reasonable likelihood that this particular defense attorney would have made a different trial strategy. And it's an objective factor not based on any defense attorney, but this specific one. Well, we know that this specific defense attorney would have done the same exact thing even if he wasn't representing anyone else because it made sense in the context of this case. And this is a very fact-specific case that you have before you. The but-for analysis is what the defense cannot overcome. And the fact that he was calling the other witnesses was made because there was a conflict. It simply doesn't make sense. Counsel, Prusak admitted that there would be a conflict if both defendants had the same trier of fact. And so given that, we don't look at the trier of fact, do we? We look at what counsel's conduct was. Yes. I'm sorry, I didn't mean to cut you off. And whether or not he believed under those circumstances that he could do anything he wanted because the trier of fact was different. But that isn't the analysis, is it? It's not. And let me just clarify, a full reading of the record says that he said they needed to have separate triers of fact. The reason is Lowell, it was known from the get-go that Lowell was the shooter. Lowell told him he was the shooter. So he had that information. And accountability theory is more of a legal theory that the jury might not understand. So Attorney Prusak was talking to the strategic theories he would have. One, Lowell needed a bench trial so that the judge could hear the evidence and realize that the state's case was not strong. Lowell had no chance with a bench trial. His best chance was with a jury trial. So there's kind of an inconsistency. Attorney Prusak wasn't talking to a conflict. He was talking about the trial strategy that needed to be presented in this case. But didn't he admit that there would be a conflict if it was the same trier of fact? That was his impression. His impression was that he couldn't win the case if there was the same trier of fact. So he didn't use the word conflict? I don't believe he used the word conflict. He said they needed separate triers of fact. And I don't have the record site in front of me, but he said they needed separate triers of fact. Now, even if he admitted that there was a conflict of interest at that point, the defense still has to show at the evidence you're hearing that there was this adverse effect, which they certainly can't. This defense attorney had a client not only that he gave an inconsistent statement to the police, the defendant told the police that he was two doors down, so he doesn't even place himself at the scene. Then he tells his own attorney, I was actually there and I had a gun and I was breaking windows. So we have a defense attorney that's faced with a client who has a gun who's at the scene. Now, his friends come much later, at least six months later and say, by the way, he wasn't actually there. The conflict at that point was a potential conflict because he never intended on calling these witnesses for all the reasons that we discussed, because they would have been impeached. So the defendant cannot show that there was an adverse effect, that there's any reasonable likelihood that this defense attorney would have chosen any other strategy other than the one that he did, which was reasonable doubt in this case. And that is completely consistent with both this court's findings and also the federal court's findings, and Kyler v. Sullivan and Gonzalez v. Mize. It's consistent with that kind of analysis. Since we're not in a per se world and we're in the second part, it's both. It's not either or. It's actual conflict and an adverse effect. And under this particular set of circumstances, it's difficult, if not impossible, it's impossible to even show that a criminal defense attorney, given the set of circumstances he had, would have chosen to call three witnesses who were rival gang members to the state, who had multiple criminal backgrounds, who gave inconsistent statements to the police and who would be thoroughly impeached. He would not, in his conscience, even get up on a closing argument and make any type of argument. And because he brought this to the bench, to a bench trial, and was arguing to a judge, he certainly couldn't argue, believe my witnesses but don't believe the state's. The adverse effect prong is the most difficult prong for the defendant to overcome because of his own confession to his attorney, and that's where the whole argument falls apart. And for these reasons and the ones that we discuss in our brief, the people request that you affirm the judgments of the trial court below and the appellate court. Thank you. Just briefly, Your Honors. Number one, this was not a sound trial strategy of not calling these witnesses. This was a very, very weak state's case. Mr. Prusak was proceeding under a reasonable doubt theory for LaValle, and his reasonable doubt theory would have only been made stronger if he had called these witnesses. It's also important to know that the moment these witnesses walked into Prusak's law offices, a conflict of interest had arisen. He was no longer in the position to be able to adequately assess whether or not to call these witnesses because he was now operating under an actual conflict of interest, and any decision he made was colored by that conflict of interest. Are we, are you suggesting we shouldn't give any difference to the trial court's findings? I'm under, I'm not suggesting, I'm stating that under either standard of review, LaValle has stated his position. I'm not suggesting that the trial court should be able to do that. I'm just saying that under either standard of review, LaValle has stated his position. In dismissing LaValle's petition, the trial court merely acknowledged that Mr. Prusak had testified. It didn't mention any of the six defense witnesses. I think it's also important to note that a great amount of time had passed since the hearing had concluded, and he, in the trial court also didn't specify, didn't specify what the exact legal issue the court was deciding. Additionally, the adverse effect here is that three witnesses came to Mr. Prusak. They told Mr. Prusak that they were present.  They did not see LaValle, hand him a gun, and because of the dual representation of both brothers here, Prusak did not call these witnesses. For these reasons, I respectfully request that this court reverse the remand for a new trial. Case number 107701, People of the State of Illinois v. Taylor, will be taken under advisement. Marshal is agenda number five.